UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                         CR 15-70(ADM/LIB)

| | |
|---|---|
| United States of America,   ) | |
| ) | |
|       Plaintiff,   ) | |
| ) | **DEFENDANT'S OBJECTIONS TO THE** |
| ) | **REPORT AND RECOMMENDATION** |
| vs.   ) | |
| ) | |
| Caleb Stuart Lofald,   ) | |
| ) | |
|       Defendant.   ) | |

* * * * * * * * * * * * * * * * *

The defendant, Caleb Stuart Lofald, through and by his attorneys Paul Engh and Richard Gondik, and in accordance with Local Rule 72.2(b)(1), hereby objects to the Report and Recommendation of Magistrate Judge Leo Brisbois, filed on June 3, 2015.  Specifically, we object to the Magistrate's opinion that the inevitable discovery doctrine somehow saves the defective warrant authorizing the search of Mr. Lofald's house.  The Report and Recommendation obviates the warrant requirement, so holds the established case law the Magistrate Judge did not cite.

Moreover, Mr. Lofald objects to the Report and Recommendation that his statements made the law enforcement authorities at the Fire Station and his home on November 20, 2014 not be suppressed.

**The search warrants**

Before the motions hearing, the Government conceded the search warrant for Mr. Lofald's home lacked probable cause.

1

Government's Response to Defense Motions, at p. 10; Docket Entry 22. The claim instead was that the "good faith" doctrine, see United States v. Leon, 468 U.S. 897 (1984), cured the intentional error. The Magistrate rejected this vacuous argument. Report and Recommendation at pp. 15-18. The defense obviously agrees.

What we disagree with is his opinion that the inevitable discovery doctrine avoids suppression. Report and Recommendation at pp. 18-21. The detailed analysis for which this Magistrate Judge is well known is notably missing, the Lofald home warrant upheld in two short paragraphs.

> . . . At the time of the violation, i.e., the execution of the invalid warrant to search Defendant's residence, the officers had previously interviewed Defendant, who revealed the existence of contraband at his residence during the interview. At the evidentiary hearing, Investigator Pauly testified that, had the officers not already obtained a warrant for the search of the Defendant's residence, the information they obtained from Defendant during the interview about the presence of a second computer and hard drive in Defendant's residence that Defendant had used to download child pornography would have prompted them to do so.
>
> Accordingly, the Court concludes that the Government has proved by a preponderance of evidence both that there is a reasonable probability that the evidence seized during the execution of the warrant to search Defendant residence would have been found absent police misconduct and that the police had been pursing a substantial alternative line of investigation at the time.

Report and Recommendation at pp. 18-19.

The problem with the analysis is that it guts the Fourth Amendment warrant requirement. It is also internally

inconsistent with the holding that the warrant for the home was not secured in good faith and rewards a police drafting failure.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house." Payton v. New York, 445 U.S. 573, 590 (1980). Without a valid warrant and absent exigent circumstances, the Duluth police officers were prohibited from searching the Lofald home. Payton, 445 U.S. at 586; Steagald v United States, 451 U.S. 204, 211 (1981). Note, too, that Mr. Lofald didn't consent. Motions Trans. at p. 101.

The Report and Recommendation's circular logic – that a defective warrant to a home does not bar entry, because later on the police would have obtained a better warrant – has been rejected over and over again. As the Sixth Circuit observed in United States v. Griffin, 502 F.2d 959, 961 (6th Cir. 1974), "[t]he assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant . . . would as a practical matter be beyond judicial review." Indeed, "[a]ny other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." Id.

United States v. Quinney, 583 F.3d 891 (6th Cir. 2009) likewise rejected the idea expressed by Magistrate Brisbois: that since the officers could have gotten another warrant, they necessarily would have. The seizure with a defective warrant is

cured with an un-acted upon intention to obtain a get better one. Such an approach, holds Quinney, would "circumvent" the warrant requirement "via the inevitable discovery doctrine." Id. at 894. Ergo Mr. Lofald's statement that child pornography would be found in his garage isn't a cure for an illegal entry.

Additional cases are everywhere. United States v. Johnson, 22 F.3d 674, 683 (6th Cir. 1994) cast aside the government's syllogism that "simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so."

United States v. Buchanan, 904 F.2d 349, 356-57 (6th Cir. 1990) dismissed the the government's posit that had the agents collected sufficient information for a finding of probable cause, the warrant-less search would have been permitted.

Here is the ruling of United States v. Bowden, 240 Fed. Appx. 56, 63 (6th Cir. 2007): "Doubtless, the inevitable-discovery doctrine does not permit police, who have probable cause to believe a home contains contraband, to enter a home illegally, conduct a warrant-less search and escape the exclusionary rule on the ground that the police could have obtained a warrant yet chose not to do so." (emphasis in original).

Of significance, the Supreme Court's lead out case discussing the inevitable discovery doctrine, Nix v. Williams,

467 U.S. 431, 447 (1984), did not involve a defective search warrant.  In Nix, the defendant's defective confession as to the location of the homicide victim wasn't critical.  For the volunteers were already searching in the right vicinity and would have found the body no matter what Mr. Nix said at the same time. Id. at 459.

Nix, a confession case, does not reach the Magistrate's suggestion that the Fourth Amendment may be undercut by the inevitable discovery doctrine.  "Despite Nix, it is still true . . . that the inevitable discovery rule simply is inapplicable in those situations where its use would, as a practical matter, operate to nullify important Fourth Amendment safeguards."  Sec. 11.14, LaFave, Search and Seizure (Thomson Reuters 2012), at p. 347.  The Duluth Police point of view, "If we hadn't done it wrong, we would have done it right," is not compelling let alone an acceptable statement of law.  LaFave, at p. 347 (quoting United States v. Thomas, 955 F.2d 207, 210 (4th Cir. 1992)).

The Eighth Circuit has also ruled on the efficacy of our claim.  "Recognizing that the inevitable discovery doctrine is designed, at least in part, to place the prosecution in no worse of a position for the illegal acts of police officers, we simply cannot grant police officers carte blanche to trample constitutional rights whenever they might have probable cause to obtain a search warrant and thereby placing them in a better

5

position because of their illegal acts." <u>United States v. Madrid</u>, 152 F.3d 1034, 1041 (8th Cir. 1998).

There is no evidence presented that Detective Pauly would have gotten a second warrant that may have saved the first. Her testimony was that if she had <u>no</u> warrant for the Lofald home, she would have gotten one based upon Mr. Lofald's admissions. Motions Trans. at p. 49. But she had a warrant, and was satisfied it was a good one even though it did not contain a probable cause predicate. The Detective made absolutely no effort redraft the warrant she had obtained, felt no need to. Motions Trans. at p. 71. She explored no alternative means of obtaining the evidence.

The inevitable discovery evidence has to be of the "concrete" kind, not a supposition after the fact, the smug, self-serving thought that, 'of course, yes, I would have gotten a warrant though I never did.' <u>See</u> <u>United States v. Connor</u>, 127 F.3d 663, 668 (8th Cir. 1997) (holding the inevitable discovery doctrine inapplicable for lack of "concrete" evidence that the police even attempted to explore "any alternative investigatory approach" except for an illegal search).

In order to preserve the Fourth Amendment warrant requirement so to not "enable police officers to take shortcuts clearly prohibited by the Fourth Amendment," <u>Madrid</u>, 152 F.3d at 1041, the Magistrate Judge should have used another analysis. He

should have emphasized instead Investigator Pauly's obligation (and better practice) to call Judge De Santo with the newly discovered evidence obtained from Mr. Lofald.  Motions Trans. at p. 71.  The Court's focus should have been that no effort was made to supplement and redraft the warrant for his consideration. Id.  That preferred course was announced two years ago in Missouri v. McNeely, 133 S.Ct. 1552 (2013).  The use of warrants (including telephonic) is now encouraged in order to preserve the "neutral magistrate's essential role as a check on police discretion."  Id. at 1562-63.

Remember this was to be a local prosecution.  Mr. Lofald was first charged in the St. Louis County District Court.  No federal agents were ever involved.  The case agent is a Minneapolis Police Officer, who trolls the illicit internet sites, looking for lonely down-loaders.  See the Warrant affidavits.

The Minnesota Rules of Criminal Procedure have long authorized telephonic warrants.  See Rule 36.01, Minn.R.Crim.P. See generally State v. Lindsey, 473 N.W.2d 587 (Minn. 1991) (recognizing the validity).  For decades now, the telephonic warrant has been expeditiously granted by the local District Courts.  See State v. Raines, 709 N.W.2d 273, 275 (Minn. App. 2006))(execution in less than two hours after request), rev. denied (Minn. April 18, 2006; State v. Cook, 498 N.W.2d 17, 18-19 (Minn. 1993)(less than an hour between telephonic request and

authorized search).

The Federal case law and Rules permit the telephonic warrant as well. See e.g. United States v. Stonerook, 134 Fed. App. 982, 984 (8th Cir. 2005)(holding that "under federal law affidavits sworn before a judge telephonically are not per se impermissible"); Rule 41(d)(3), Fed.R.Crim.P.

Even if Judge De Santo, who signed the warrants, could not be found, a St. Louis County judge remains on call. Investigator Pauly agreed that a St. Louis County District Court judge was reachable 24/7 with her information obtained from Mr. Lofald. Motions Trans. at p. 71. Each District Court Judge in Minnesota is available to the public at all hours. See Minn. Stat. 625.01 (imposing upon a Judge the obligation to enforce the law even when on vacation).

Post McNeely telephonic warrants, under both the federal rules, and Minnesota's (cited by the Court) "allow for a more expeditious process of warrant applications, particularly in contexts like drunk-driving investigation where the evidence offered to establish probable cause is simple." 133 S.Ct. at 1562, n. 4. Despite the undue prolixity of the Lofald affidavits, a child pornography warrant simply matches an IP address with an illicit receipt and/or transmission or, in this case, an admission.

The Magistrate Judge's ruling eviscerates the requirement

that a valid warrant be obtained before searching an individual's sacred home.

**The Statements at the Fire Station and Home**

We also object to the Magistrate Judge's ruling that Mr. Lofald was not in custody during the Fire Station and at home interviews including, of course, the rather rote application of the so-called Griffin factors, six in all. Report and Recommendation at pp. 21-26.

Miranda's warnings were designed as a prophylactic to balance out law enforcement's unfair advantage during the question and answer process. United States v. Patane, 541 U.S. 630, 640 (2004). Agree, there are cases holding that the questioning at Mr. Lofald's place of employment is not custodial. United States v. Wallace, 323 F.3d 1109, 1113 (8th Cir. 2003); United States v. Helmel, 769 F.2d. 1306, 1320 (8th Cir. 1985). Moreover, the Eighth Circuit had held that Miranda is "not applicable" to at home interrogations. United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005); see also United States v. Williams, 760 F.3d 811, 814 (8th Cir. 2014).

But the ultimate test is "would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). The totality of circumstance is to be considered. United States v.

Huether, 673 F.3d 789, 794 (8th Cir. 2012).

The jurisprudence remains fact bound, mixed, sui generis. Czichray is inconsistent with United States v. Longbehn, 850 F.2d 450 (8th Cir. 1988), a case the Magistrate refused to discuss though cited to him.  In Longbehn, a police officer was approached while at work (at a firing range), escorted by well armed investigators to his home, and in both places, as here, was asked pointed questions about his alleged criminal conduct.  Id. at 452.  The government's like claim – that Officer Longbehn was "not deprived of his freedom of action to a significant degree" – was rejected by our Circuit.  Id. at 453.  The fact that the officer was told he was not under arrest was not the deciding factor.  Id.  The constant chaperoning, as here, served as a persuasive counter.  Id. at 451.

Mr. Lofald's reasonable expectation of privacy was undoubtedly heightened in both his home and his home away from home, given the work hours of a fireman and the fact that he lives at the station while on duty.  See California v. Ciraolo, 476 U.S. 207, 212-213 (1986)(noting the law's significant need to protect "the personal privacy in an area intimately linked to the home."); Payton, 445 U.S. at 576 (1980)(emphasizing the more stringent requirements to be met before police conduct an "invasion of the privacy of the home."); Kirk v. Louisiana, 536 U.S. 635, 638 (2002)(same).

10

Czichray and the similar holdings run contrary to Beckwith v. United States, 425 U.S. 341 (1976), where the High Court recognized "that non-custodial interrogation might possibly, in some situations, by virtue of some special circumstances be characterized as where 'the behavior of . . . law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. . .'" Id. at 347-48 (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961)).

The police assurances given – that Mr. Lofald wasn't in all that much trouble, that probation and treatment would be the end result, the investigation a mere "bump in the road" – all masked an intention to keep the interview ongoing. Motions Trans. at pp. 92-93. The Report and Recommendation tacitly approves law enforcement's two on one questioning, the promise of possible probation ethereal here, the thought that Mr. Lofald's precarious emotional state had no possible impact, that the constant escorting of him at the Station and to his home and around his home all couldn't possibly be restrictive. Report at p. 25.

To say Mr. Lofald "would have felt free to terminate the interview" Report at p. 26, ignores the state's power momentum provided by a defective warrant, leveraged against his abject vulnerability.

A transcript was ordered and has been filed.

Dated: June 17, 2015                    Respectfully submitted,

                                        /s/ Paul Engh


                                        _____
                                        PAUL ENGH
                                        Suite 1225, U.S. Bank Plaza
                                        220 South Sixth Street
                                        Minneapolis, MN  55402
                                        (612) 252-1100
                                        Engh4@aol.com


                                        /s/ Richard S. Gondik, Jr.


                                        _____
                                        RICHARD S. GONDIK, JR.
                                        1215 Belknap Street
                                        Superior, WI 54880
                                        (715) 395-3180
                                        richardgondik@gmail.com

                                        Attorneys for Mr. Lofald