**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

v.

Caleb Stuart Lofald,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 15-70 ADM/LIB

---

Carol M. Kayser, Esq., Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, for Plaintiff.

Paul C. Engh, Esq., Minneapolis, MN, and Richard S. Gondik, Jr., Esq., Richard S. Gondik, Jr., SC, Superior, WI, for Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Caleb Stuart Lofald's ("Lofald") Objections [Docket No. 32] to Magistrate Judge Leo I. Brisbois June 3, 2015 Report and Recommendation [Docket No. 30] ("R&R"). In the R&R, Judge Brisbois recommends denying Lofald's Motion to Suppress Searches and Seizures [Docket No. 20] and Motion to Suppress Statements [Docket No. 21]. After a thorough de novo review of the record and for the reasons stated below, Lofald's Objections are overruled and Judge Brisbois' R&R is adopted.

## II.  BACKGROUND[1]

In September 2014, Minneapolis Police Officer Dale Hanson ("Hanson") began an undercover peer-to-peer file sharing investigation of Internet Protocol ("IP") address 68.119.16.86.  During this investigation, Officer Hansen downloaded computer files containing images of child pornography from a host computer assigned with IP address 68.119.16.86.  Hanson later learned that this IP address was associated with a computer located within Fire Station No. 7 of the City of Duluth ("Station No. 7").  Hanson communicated this information to Duluth Police Investigator Jeanine Pauly ("Investigator Pauly").  Tr. [Docket No. 27] 23:23-24:1.  Hanson requested Investigator Pauly verify the physical location affiliated with the IP address and determine whether there was open wireless internet access at that location.  Id, 24:9-25:18.

Investigator Pauly verified that the IP address was associated with Station No. 7.  Id. 27:19-28:2.  Officer Hanson was able to download computer files containing child pornography from the IP address affiliated with Station No. 7 on September 7, 8, and 20, and November 9 and 10 of 2014.  Investigator Pauly obtained payroll and schedule records for Station No. 7 employees which showed only two employees, one of which was Lofald, worked at Station No. 7 on each of the dates Officer Hansen downloaded the computer files with the pornography.  Id. 27:5-18.  Investigator Pauly then obtained vehicle and residence information from the Minnesota Department of Motor Vehicles for Lofald and the other employee.  Id. 28:3-19.

Investigator Pauly used this information to draft search warrant applications for Station

---

[1] The following facts are taken from Judge Brisbois' R&R and the Transcript [Docket No. 27] of the motions hearing held on April 28, 2015.  A condensed version of the facts is presented here; a full recitation of the facts is presented in Judge Brisbois' R&R.

No. 7 and the residences of Lofald and the other employee. Id. 28:20-29:2. In addition, Investigator Pauly averred she was aware firefighters reside part time at the fire station during their 24-hour shifts, and that firefighters often bring personal items, including electronic devices, with them to work.

The warrants were signed on November 19, 2014. The search warrant for Station No. 7 authorized law enforcement to search for a list of potential evidence which would be indica of computer use related to pornography.

The search warrant for Station No. 7 was executed in the morning of November 20, 2014. Id. 33:21-23. Before the search began, the firefighters at Station No. 7 were gathered into a single room to allow the investigating officers to address the firefighters as a group. Id. 36:5-23. After explaining the purpose of their visit, Lofald approached Investigator Pauly and said he could make the search easier if he could talk with her, and that he was the person the officers wanted to speak with. Id. 38:2–11. Investigator Pauly and Sergeant Thomas Champaigne ("Sergeant Champaigne") brought Lofald into a room so they could speak in private. Id. 38:15-18. The room Investigator Pauly selected for their conversation was Lofald's individual room at Station No. 7. Id. 38:19-22.

After closing the door to the room and before starting the interview, Investigator Pauly told Lofald that he was not under arrest. Id. 39:20-24. A recording device was turned on to record the interview. Investigator Pauly took a position near the room's closet and Sergeant Champaigne sat on the bed. Id. 44:9-16. At no point during the interview was Lofald restrained. Id. 39:4-5. Both law enforcement officers were armed with weapons that remained holstered during the interview. Id. 39:6-17.

3

Shortly after the interview began, Lofald admitted he had shared computer files using a laptop computer and a file-sharing program. Id. 41:15-23. The topic of child pornography was not yet specifically mentioned. Nevertheless, Sergeant Champaigne described Lofald's situation as "a bump in the road." Id. 62:10-14. Lofald disagreed with Sergeant Champaigne's assessment, and Sergeant Champaigne responded by affirming his earlier belief and noted Lofald's lack of criminal history. Id. 63:9-14.

In discussing Lofald's potential punishment, Investigator Pauly told Lofald: "Wait, you asked me a question earlier on what happens. The people that we talk with like you that are honest with us. A lot of them end up doing just fine." Id. 66:1-2. Sergeant Champaigne stated:

> You know, and - and people do get help for his. People do get help for this, people do go seek help and get treatment for this. People do really well. And if it was a bump in the road and then they have moved on and then they put it behind them - I am working on a guy who [Investigator Pauly] is working on, his third time we have dealt with him.

Id. 66:10-15. A few minutes later, Sergeant Champaigne stated to Lofald:

> So you can, you can . . . like, I've said it before. You don't have to talk to us. [inaudible] I've said that to you before. The thing is, we're going to find out. If you, if you want to cooperate and tell us this is what I did, this is why I did, this is how I did, this is . . . you know? That's great. And it looks good for the court. The court says you know he's not [inaudible]. And, and we move on. [Inaudible] What we're seeing of most people is probation. K. Not jail time, probation. K. I can't tell you what the courts will do. I'm just telling you the generalities. Um. Most of the time that I've seen with people are, get angry. But that, it doesn't lead to an end. There is some, obviously there is some soul searching and some explanation and some, probably some counseling.

R&R 9.[2]

---

[2] This statement was taken from the recording of Investigator Pauly and Sergeant Champaigne's interview at Station No. 7.

While Investigator Pauly and Sergeant Champaigne were speaking with Lofald, other law enforcement officers would occasionally enter and exit the room. Id. 45:19-21. Approximately 16 minutes into the interview, Investigator Pauly stepped out of the room, leaving Sergeant Champaigne alone with Lofald. At this time, Lofald requested Sergeant Champaigne turn off the recorder, which Sergeant Champaigne did. Tr. 80:1-6. After the recorder was turned off, Lofald admitted to Sergeant Champaigne that he had been using file-sharing programs to search for and download images of child pornography. Lofald admitted he had images of child pornography on his laptop and portable hard drives that were stored in his locker at Station No. 7. Lofald also said he had child pornography stored in computer hardware located in the garage of his home. Id. 82:11-13.

After this, Sergeant Champaigne told Lofald that law enforcement had already obtained a warrant to search his residence. Id. 83:22-24. Sergeant Champaigne asked Lofald if he would like to accompany the officers while they executed that warrant. Lofald responded that he wanted to accompany the officers so he could speak with his family before the search began. Id. 83:22-84:6. Sergeant Champaigne then drove Lofald in Lofald's truck to the Lofald residence. Id. 84:13-20. Once they arrived, Lofald spoke with his family members, who then left the home. Id. 85:20-21. During the search of his home, Lofald was not physically restrained, but he was prevented from accessing the part of his house where he told the officers he had firearms. Id. 85:12:14; 86:3-7. Lofald remained at his residence after the search and was not arrested on these charges until weeks later. Id. 86:14-19.

On March 9, 2015, Lofald was charged by indictment with one court of production of child pornography, in violation of 18 U.S.C. § 2251(a); five counts of receipt of child

pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252 (a)(4)(B) and 2252(b)(2). Indictment [Docket No. 1].

On April 7, 2015, Lofald moved for suppression of any evidence obtained as a result of the November 20, 2014 search warrant executed for Station No. 7 and the execution of the search warrant for his residence. Lofald also moved to suppress his statements made while being interviewed by Investigator Pauly and Sergeant Champaigne at Fire Station No. 7 and statements made while officers were executing the warrant of his residence. In his R&R, Magistrate Judge Brisbois recommended denying Lofald's suppression motions. Lofald timely objected.

Lofald raises two objections. Lofald first objects to Judge Brisbois' conclusion that the deficient search warrant for Lofald's residence was saved by the inevitable discovery doctrine.[3] Lofald also objects to Judge Brisbois' conclusion that the statements he made at Station No. 7 to Investigator Pauly and Sergeant Champaigne and any statements made while law enforcement was executing the warrant of his residence are admissible.

### III. DISCUSSION

**A. Standard of Review**

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo

---

[3] Lofald does not object to Judge Brisbois' conclusion that the search warrant for Station No. 7 was supported by probable cause. The Court agrees with Judge Brisbois' reasoning and adopts his recommendation that Lofald's Motion to Suppress the Search and Seizures from Station No. 7 be denied.

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b).  A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**B.  Warrant to Search Lofald's Residence**

Before the suppression hearing, the Government conceded that the warrant to search Lofald's residence was not supported by sufficient probable cause.[4]  Despite the concession, the Government argued that the evidence seized from the search could still be admitted under the good faith exception established by United States v. Leon, 465 U.S. 897 (1984), or through the inevitable discovery doctrine.  In the R&R, Judge Brisbois concluded that the Leon good faith exception did not apply because the affidavit in support of the warrant was so lacking in indicia of probable cause that belief in the existence of probable cause was unreasonable.  However, Judge Brisbois concluded the inevitable discovery doctrine applied because the evidence at Lofald's residence would have been inevitably discovered and there was no police misconduct requiring suppression.

Lofald objects to Judge Brisbois' conclusion that, under the inevitable discovery doctrine, the search of his home was lawful.  Lofald argues that Judge Brisbois' reasoning is circular, that is, a defective warrant is saved because a better warrant would have eventually been obtained and that such a ruling renders the Fourth Amendment's warrant requirement

---

[4] At the time they obtained the search warrant for Station No. 7, the investigators had also obtained search warrants for the homes of Lofald and the other employee who they believed was at the fire station at all times Officer Hanson downloaded the pornography from the suspect computer.  The search warrants for the residences had no stated nexus between the computer evidence of pornography and the houses to be searched.

meaningless. Lofald additionally argues that the Fourth Amendment cannot be circumvented by the Government simply stating after the fact that it would have obtained a better warrant had it known the first warrant was defective.

"The inevitable-discovery doctrine posits that if the prosecution can establish by a preponderance of the evidence that the information, otherwise to be suppressed under the exclusionary rule, ultimately or inevitably would have been discovered by lawful means, then the exclusionary rule does not apply." United States v. Johnston, 353 F.3d 606 616-617 (8th Cir. 2003) (citing Nix v. Williams, 467 U.S. 431, 444 (1984)). To make a showing of inevitable discovery, the Government must show by a preponderance of the evidence that: "(1) there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." Johnston, 353 F.3d at 617. "In this analysis, 'it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred.'" United States v. McManaman, 673 F.3d 841, 846 (8th Cir. 2012) (quoting United States v. Villalba–Alvarado, 345 F.3d 1007, 1020 (8th Cir.2003)).

Lofald contends there was no evidence that Investigator Pauly would have obtained a second warrant for the Lofald residence if she did not have the initial warrant. The Court disagrees. At the suppression hearing, Investigator Pauly and Sergeant Champaigne both testified that during the interview at Station No. 7, Lofald admitted child pornography was stored in computer hardware at his residence. Tr. 46:7-17, 23-25; 82:11–13. This information was volunteered by Lofald before he was told officers had already secured a warrant to search his

residence, negating any suggestion that Lofald made the disclosure solely because he believed the contraband would have been discovered pursuant to a search he knew was imminent. Id. at 99:4-7. Based on Lofald's volunteered disclosures, there was a reasonable probability that if law enforcement did not already have a search warrant for Lofald's house, the Government would have obtained one on the basis of Lofald's admissions and the computer evidence would have been discovered. Investigator Pauly testified to this, stating that if she did not already have a warrant to search Lofald's house, she would have obtained one based on his responses during the interview.[5] Id. at 49:4-17. While Lofald claims Investigator Pauly's after-the-fact comments should be discounted as smug and self-serving, the Court concludes given the strong evidence provided by Lofald's statements, Investigator Pauly would have taken the effort to obtain a search warrant for Lofald's residence. Thus, the Government has shown by a preponderance of the evidence that there was a reasonable probability that the evidence would have been discovered by lawful means without the search pursuant to a defective warrant.

As to the second prong, the Government has also shown by a preponderance of the evidence that they were pursuing a substantial, alternative line of investigation at the time of the constitutional violation. The search of Station No. 7 and the interview with Lofald satisfies this requirement. Similar to Nix where the only event that terminated the alternative line of investigation was the coerced admission from the defendant, the defective warrant was what stopped the officers here from obtaining a search warrant for Lofald's residence based on his admissions at Station No. 7.

---

[5] Clearly this would have been the better practice as the search warrant application would have included the required nexus to Lofald's residence provided by his admissions.

The Court therefore adopts Judge Brisbois' conclusion that the inevitable discovery doctrine saves from suppression the evidence discovered at Lofald's residence.

**C. Motion to Suppress Statements**

Lofald additionally objects to Judge Brisbois' denial of suppression of Lofald's statements at Station No. 7 and at his residence. Judge Brisbois concluded that while speaking at Fire Station No. 7 and at his residence, Lofald was not in custody and a Miranda warning was not required. Lofald does not directly attack Judge Brisbois' analysis of the six indicia of custody identified in United States v. Griffin, 922 F.2d 1343 (8th Cir. 1990). Lofald instead argues that a Miranda warning was required because, under the totality of the circumstances, a reasonable person in Lofald's position would not feel they were at liberty to terminate the interview and leave.

"Miranda prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

Lofald argues that United States v. Longbehn supports his contention that he was in custody at the time of the interview at Station No. 7. 850 F.2d 450 (8th Cir. 1988). In Longbehn, the defendant, a St. Paul, Minnesota police officer, was at the firing range when he was commanded by the head of the St. Paul Police Narcotics Unit to accompany him to the

defendant's house so the defendant could be present while a search warrant was executed there. Id. at 451. While at the house, three separate officers asked the defendant probing questions about the ongoing investigation without providing a Miranda warning. Id. After the search was completed, the defendant was brought to police headquarters, was forced to surrender his badge and identification, and was placed on administrative leave. Id. Only then was he told he was free to leave. Id. The Government argued that since Longbehn was not significantly deprived of his freedom while being asked questions at his residence during the execution of the search, Miranda advisories were not required. Id. at 453. In rejecting the Government's contention, the Eighth Circuit stated, "we find no evidence presented in this record which illustrates that [the defendant] was free to leave before being discharged []. Rather, we conclude that [the defendant's] detention was police-dominated, inherently coercive, and tantamount to a formal arrest." Id.

The circumstances surrounding the questioning in the instant case differ significantly from Longbehn. Unlike in Longbehn, the environment in which Lofald was interviewed was not police-dominated, inherently coercive, and tantamount to a formal arrest. Quite the opposite. Most significant is that unlike in Longbehn, Lofald approached Investigator Pauly and initiated the conversation that he argues required a Miranda warning. Also unlike in Longbehn, the conversation occurred in Lofald's assigned room and involved no more than two law enforcement officers who informed him that he would not be arrested that day. In short, the circumstances surrounding the questioning in Longbehn are notably different to what occurred here. Longbehn does not support the suppression of Lofald's statements at Station No. 7.[6]

---

[6] Lofald additionally argues that any statements made at his residence while law enforcement was conducting their search need to be suppressed due to the lack of a Miranda warning. Neither

Lofald also takes issue with Investigator Pauly and Sergeant Champaigne's comments that Lofald's situation was a "bump in the road" and that probation was a typical outcome. Without more, however, these comments do not change the outcome. Importantly, neither Investigator Pauly nor Sergeant Champaigne promised Lofald that he would only receive probation as punishment for his crimes. Moreover, Investigator Pauly testified that she believed her attempts at assuaging Lofald's concerns were truthful.[7] While Sergeant Champaigne testified the comments were made to engage Lofald and encourage him to talk, the record reflects the statements were non-coercive and a reading of Lofald's Miranda rights was not required. See Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001) (discussing law enforcement statements about potential penalties).

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Caleb Stuart Lofald's Objections [Docket No. 32] to Magistrate Judge Leo I. Brisbois' June 3, 2015 Report and Recommendation [Docket No. 30] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 30] is **ADOPTED**;

---

Lofald's brief nor the record, however, identifies any statements that Lofald made at this time. Nevertheless, any statements made by Lofald while at his residence do not need to be suppressed because Lofald was not in custody and a Miranda warning was not required. While the law enforcement presence at his residence may suggest a coercive environment similar to Longbehn, this notion is undermined because Lofald freely decided to accompany the officers to his house. Although Lofald was prevented from accessing the area of his house where he stored his firearms, there is nothing in the record that Lofald's freedom was somehow restrained once he arrived at his property. See Griffin, 922 F.2d at 1349 (noting the indicia of custody).

[7] At the time of the interview, Investigator Pauly did not know Lofald was producing child pornography, nor did she know Lofald would be facing federal charges. Tr. 75:18-76:6.

3. Lofald's Motion to Suppress Searches and Seizures [Docket No. 20] is **DENIED**; and

4. Lofald's Motion to Suppress Statements [Docket No. 21] is **DENIED.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 3, 2015.